1

2

3

4                        UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7   SAN FRANCISCO BAY AREA RAPID                    Case No.  20-cv-04468-EMC
    TRANSIT DISTRICT,
8
                         Plaintiff,
9                                                   ORDER DENYING DEFENDANTS'
         v.                                         MOTIONS TO DISMISS
10
                                                    Docket Nos. 15, 18, 20
    NATIONAL UNION FIRE INSURANCE
11  COMPANY, et al.,

12                       Defendants.

13

14

15          Plaintiff San Francisco Bay Area Rapid Transit District ("SF BART") filed this suit against

16  Midwest Employers Casualty Company ("Midwest"), National Union Fire Insurance Company

17  ("National"), and Westport Insurance Company ("Westport") (collectively, "Defendants").

18  Defendants insured SF BART at different periods in time between July 1, 1992, and July 1, 2006.

19  SF BART raises two causes of action for (1) breach of contract; and (2) declaratory relief.

20          Pending before the Court are Defendants' independently filed motions to dismiss pursuant

21  to Federal Rule of Civil Procedure 12(b)(6).  All three motions raise the same grounds for

22  dismissal: (1) judicial estoppel; (2) collateral estoppel; (3) failure to state a claim for breach of

23  contract; and (4) failure to state a claim for declaratory relief.  Having considered the parties'

24  briefs, accompanying submissions, and the oral argument of counsel, the Court **DENIES**

25  Defendants' motions to dismiss.

26                                  **I.      BACKGROUND**

27  A.    Factual Background

28          SF BART's complaint alleges as follows.  SF BART hired Michael Gonsolin as a police

officer in 1979.  *See* Docket No. 1-1 ("Compl."), ¶ 13.  Gonsolin retired on September 11, 2005, and was diagnosed with multiple myeloma on or about October 31, 2006.  *Id.* ¶¶ 14, 15.  SF BART is a self-insured rapid transit district obligated to provide workers' compensation benefits to its employees.  *Id.* ¶ 1.  Therefore, SF BART held workers' compensation insurance from various insurers for the relevant time period, as follows:

- **Gen Re**:  July 1, 1985, through July 1, 1992.  Midwest Mot. at 2.
- **National**:  July 1, 1992, through July 1, 2001.  Compl. ¶ 7.
- **Westport (f/k/a Employers Reinsurance Corporation)**:  July 1, 2001, through July 1, 2002.  *Id.* ¶ 9.
- **Midwest**:  July 1, 2002, through July 1, 2006.  *Id.* ¶ 11.

All of these insurance policies, including non-party Gen Re's policy, cover bodily injury by disease caused or aggravated by exposure to conditions of employment with SF BART.  *Id.* ¶¶ 8, 10, 12.  In other words, all of these policies presumably cover Gonsolin's injuries.  The question is which of the policies covered Mr. Gonsolin's injury.

     1.     The WCAB Litigation

On November 20, 2006, Gonsolin filed his claim with the Workers' Compensation Appeals Board (WCAB) alleging cumulative exposure to carcinogens while employed by SF BART (the "WCAB Action").  *Id.* ¶ 16.  SF BART and Gonsolin jointly retained Dr. Revels M. Cayton as the Agreed Medical Examiner (AME) in that proceeding.  *Id.* ¶ 17.  Dr. Cayton examined Gonsolin, issued an initial AME report, and was deposed.  *Id.*  In his report and in his deposition, Dr. Cayton opined that Gonsolin's multiple myeloma was medically caused by occupational exposure to benzene.  *Id.*  Dr. Cayton also testified that the general latency period for multiple myeloma was ten to twelve years (*i.e.*, October 1994–October 1996), and that the average latency period was eight to ten years (*i.e.*, from October 1996 to October 1998).  *Id.*  Dr. Cayton's report identified a fifteen-year latency period.  *Id.* ¶ 18.

On December 14, 2007, SF BART and Gonsolin attended a settlement conference before the WCAB.  *Id.*  SF BART and Gonsolin stipulated that—notwithstanding their dispute regarding the injury date—they would stipulate to an injury date from November 1, 1990, through October

United States District Court
Northern District of California

United States District Court
Northern District of California

31, 1991. *Id.* In light of the uncertainty as to how long Gonsolin would survive, and to settle with Gonsolin, SF BART and Gonsolin stipulated to this injury date based on Dr. Cayton's 12/06/2007 report which found an injury date from 11/01/1990–10/31/1991. *Id.* SF BART and Gonsolin thereafter entered into a settlement agreement, which was approved by the WCAB's administrative law judge (ALJ). *Id.*

2.      SF BART's Litigation Against Gen Re

Initially, SF BART tendered Gonsolin's claim to Gen Re, which was the corresponding excess insurance carrier on the injury date stipulated to in the WCAB Action. *Id.* ¶ 19. Gen Re began to indemnify SF BART for payments in excess of the retention. *Id.* Thereafter, a dispute arose between SF BART and Gen Re as to the injury date, and Gen Re refused to make additional reimbursements. *Id.* ¶ 20. On January 24, 2014, SF BART filed an action against Gen Re in state court, which was removed to federal court (the "Gen Re Action"). *Id.* ¶ 21. The district court concluded that Gen Re was not bound by the stipulated injury date from the WCAB Action and permitted Gen Re to relitigate the injury date. *S.F. Bay Area Rapid Transit Dist. v. Gen. Reins. Corp.*, 111 F. Supp. 3d 1055 (N.D. Cal. 2015), *aff'd*, 726 F. App'x 562 (9th Cir. 2018) (unpublished) (finding that (1) issue preclusion did not prevent Gen Re from litigating the injury date because Gen Re was not in privity with SF BART in the workers' compensation proceeding, and (2) equitable estoppel did not bar Gen Re from litigating the injury date because SF BART had knowledge that there was a dispute over the injury date). Because Dr. Cayton had passed away (Compl. ¶ 22), SF BART and Gen Re each retained separate medical experts to determine whether the injury date fell within Gen Re's policy period. *Id.* ¶ 22. Both experts opined that the injury date did not fall within the injury date stipulated to in the WCAB Action. *Id.* ¶ 22. Thus, Gen Re prevailed. SF BART appealed. *Id.* ¶ 23.

On March 6, 2018, the Ninth Circuit affirmed the district court's ruling. *See S.F. Bay Area Rapid Transit Dist. v. Gen. Reins. Corp.*, 726 F. App'x 562, 564 (9th Cir. 2018) (unpublished) (holding that the district court did not lack subject matter jurisdiction, California law did not preclude Gen Re from litigating the injury date determination in the coverage action, and Gen Re was not estopped from denying coverage).

B.        Procedural Background in This Court

SF BART filed the complaint at bar in the Superior Court of California, County of Alameda, on January 17, 2020, alleging two causes of action against Defendants Midwest, National, and Westport:  (1) breach of contract; and (2) declaratory relief.  *See* Compl.  SF BART sought coverage for the underlying workers' compensation notice.  On July 6, 2020, Midwest removed the case to this Court.  *See id.*  On July 13, 2020, Defendants independently moved to dismiss.  *See* Midwest Mot.; National Mot.; Westport Mot.

As of the date of filing the complaint, SF BART paid a total of $1,829,750.91 to Gonsolin. Compl. ¶ 25.  SF BART's retention is $500,000.  *Id.*  To date, Gen Re reimbursed SF BART in the amount of $327,069.20.  *Id.*  SF BART continues to make payments to Gonsolin.  *Id.*

## II.        LEGAL STANDARD

To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)).[1] "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550

---

[1] A court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

United States District Court
Northern District of California

1    U.S. at 557).

2                III.      **DEFENDANTS' REQUEST FOR JUDICIAL NOTICE**

3          In support of their motions to dismiss, Defendants request that the Court take judicial

4    notice of certain documents.  *See* Docket No. 16 ("Midwest RJN"); Docket No. 19 ("National

5    RJN"); Docket No. 20-1 ("Westport RJN").  SF BART did not oppose Defendants' requests for

6    judicial notice.  *See* Docket No. 26 ("Midwest Reply"), at 2.

7          Courts in this District have granted judicial notice of WCAB files, including the claim

8    filed, the compromise and release executed, and the order approving compromise and release.  *See*

9    *e.g.*, *Willis v. Baziak*, No. C 97-3031 SI, 1998 WL 118183, at *1 (N.D. Cal. Feb. 25, 1998)

10   ("Defendant requested and is hereby granted judicial notice of the Workers' Compensation Claim

11   filed by plaintiff with the California Workers' Compensation Appeals Board on 11/26/86; the

12   Compromise and Release executed by plaintiff for said claim, dated 3/31/89; and the Order

13   Approving Compromise and Release issued by the WCAB on 4/10/89.").  These documents are

14   proper for judicial notice.  The authenticity of the documents is not contested.  *Lee v. City of Los*

15   *Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *see also Minor v. FedEx Office & Print Servs., Inc.*,

16   182 F. Supp. 3d 966, (N.D. Cal. 2016) ("Proper subjects of judicial notice include . . . records of

17   administrative agencies.").  Moreover, the doctrine of incorporation by reference applies because

18   SF BART's complaint relies on the documents.

19                IV.      **DEFENDANTS' MOTION TO DISMISS**

20         Defendants argue that the Court should dismiss SF BART's complaint because SF BART

21   (1) is judicially estopped from relitigating the injury date; (2) is collaterally estopped from

22   relitigating the injury date; (3) fails to sufficiently plead a claim for breach of contract; and (4)

23   fails to sufficiently plead a claim for declaratory relief.  *See* Midwest Mot., National Mot.,

24   Westport Mot.  They assert that SF BART is bound by the date of injury stipulated to in the

25   workers' compensation proceeding.  None had policies in effect for that date.  SF BART responds

26   that judicial estoppel and collateral estoppel do not preclude it from litigating the injury date in the

27   instant case and that these issues cannot be resolved at the pleading stage.  *See* Docket No. 22

28   ("Opp'n. to Wesport Mot."), at 2.  SF BART contends that the complaint sufficiently states a

                                              5

claim for breach of contract and declaratory relief.  *Id.* at 9.  For the following reasons, the Court

agrees with SF BART.

A.      Judicial Estoppel

        The Court finds that SF BART is not judicially estopped from litigating the injury date in

the instant action.  "[The] equitable doctrine is intended to prevent litigants from playing fast and

loose with the judicial system by successfully obtaining an advantage in court on one theory, and

then switching to an inconsistent theory to gain another advantage."  *Arvin Kam Constr. Co. v.

Env't. Chem. Corp.*, No. 16-cv-02643-JD, 2019 WL 1598220, at *5 (N.D. Cal. Apr. 15, 2019).  A

court

> generally consider[s] three factors when determining whether to
> apply the doctrine of judicial estoppel. First, we determine whether
> "a party's later position [is] 'clearly inconsistent' with its earlier
> position." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)
> (citations omitted). Second, we inquire whether the party achieved
> success in the prior proceeding, since "judicial acceptance of an
> inconsistent position in a later proceeding would create 'the
> perception that either the first or the second court was misled.'" *Id.*
> (citations omitted). Finally, we consider whether the party asserting
> an inconsistent position would achieve an unfair advantage if not
> estopped.  *Id.* at 751.

*United Steelworkers of Am. v. Ret. Income Plan for Hourly-Rated Emps. of ASRCO, Inc.*, 512 F.3d

555, 563 (9th Cir. 2008).

        Defendants' judicial estoppel argument fails the second and third prongs of the *United

Steelworkers* test.  As to the second prong, SF BART did not succeed in the WCAB Action by

stipulating to an injury date with Gonsolin.  It paid a substantial sum to Gonsolin.  Moreover, if

this Court accepted a different injury date in the instant action, there would be no perception that

the first court was misled.  *See id.*  It is not obvious that SF BART thereby obtained a particular

advantage in the WCAB action.  Moreover, SF BART did not mislead the prior district court for

the same reason SF BART did not mislead the WCAB because its actions in that proceeding were

also done in good faith as it was based on the finding by Dr. Cayton.  *See Rissetto v. Plumbers and

Steamfitters Local 343*, 94 F.3d 597, 604–05 (1996).

        As to the third prong, Defendants have not demonstrated how SF BART would achieve an

unfair advantage over the Defendants here if not estopped.  *See United Steelworkers of Am.*, 512

F.3d at 563.  SF BART is not attempting to recover multiple times based on inconsistent positions. Instead, SF BART seeks a determination of which insurance company is responsible for coverage; SF BART had coverage during most of Gonsolin's employment with SF BART, and thus the question is which insurer is responsible.

The Court declines to apply judicial estoppel to prevent SF BART from litigating the injury date in the instant action.

B.    Collateral Estoppel

The Court also finds that SF BART is not collaterally estopped from litigating the injury date in the instant action.  Under California law, the test for collateral estoppel has five prongs:

> First, the issue sought to be precluded from relitigation must be identical to that decided in the former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must have been final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

*Lucido v. Superior Court*, 795 P.2d 1223, 1225 (Cal. 1990).

To have preclusive effect in federal court, state administrative determinations must satisfy: (1) the state requirements for preclusion and (2) the requirements of fairness set out in *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966).  *See Univ. of Tenn. v. Elliot*, 478 U.S. 788, 799 (1986); *see also Misischia v. Pirie*, 60 F.3d 626, 629 (9th Cir. 1995).  The *Utah Construction* requirements are: "(1) that the administrative agency act in a judicial capacity, (2) that the agency resolve disputed issues of fact properly before it, and (3) that the parties have an adequate opportunity to litigate."  384 U.S. at 422.  The California Supreme Court, which has adopted the *Utah Construction* fairness requirements, has elaborated on when the requirements have been met.  *See Pac. Lumber Co. v. State Water Res. Control Bd.*, 126 P.3d 1040, 1054 (Cal. 2006).  "Indicia of [administrative] proceedings undertaken in a judicial capacity include a hearing before an impartial decision maker; testimony given under oath or affirmation; a party's ability to subpoena, call, examine, and cross-examine witnesses, to introduce documentary evidence, and to make oral and written argument; the taking of a record of the proceeding; and a written statement

7

United States District Court
Northern District of California

1  of reasons for the decision." *Id.* at 1054–55.  The California Supreme Court has noted that the

2  enforcement of res judicata rules are more flexible in the context of administrative orders.  *See*

3  *George Arakelian Farms, Inc. v. Agric. Labor Relations Bd.*, 783 P.2d 749, 755 (Cal. 1989).

4  Furthermore,

5      > [t]he key to a sound solution of problems of res judicata in
       > administrative law is recognition that the traditional principle of res
6      > judicata as developed in the judicial system should be fully
       > applicable to some administrative action, that the principle should
7      > not be applicable to other administrative action, and that much
       > administrative action should be subject to a qualified or relaxed set
8      > of rules concerning res judicata.[2]

9  *Id.* (quoting *Hollywood Circle, Inc. v. Dep't of Alcoholic Beverage Control*, 361 P.2d 712, 714

10  (Cal. 1961) (quoting 2 Davis, Administrative Law Treatise (1st ed. 1958) p. 568))).  Therefore,

11  this Court has flexibility to apply collateral estoppel based on the stipulated injury date from the

12  WCAB, an administrative agency.

13       Assuming arguendo the basic requirements of collateral estoppel were met as a stipulation

14  may constitute a resolution of a factual issue, *see Rymer v. Hagler*, 260 Cal. Rptr. 76, 80 (App. 5th

15  Dist. 1989) ("It is the opportunity to litigate that is important in [collateral estoppel] cases, not

16  whether the litigant availed him or herself of the opportunity"), there are strong public policy

17  arguments against applying collateral estoppel.  California courts "have repeatedly looked to the

18  public policies underlying" collateral estoppel before deciding to apply the defense.  *Murray v.*

19  *Alaska Airlines, Inc.*, 237 P.3d 565, 577 (Cal. 2010).

20       Collateral estoppel "is intended to preserve the integrity of the judicial system, promote

21  judicial economy, and protect litigants from harassment by vexatious litigation."  *Vandenberg v.*

22  *Super. Ct.*, 982 P.2d 229, 237 (Cal. 1999).  The "integrity of the judicial system" is not threatened

23  by not applying collateral estoppel to the date of injury stipulated to in the WCAB action, because

24  the district court in the Gen Re Action already found that Gen Re is not bound by the injury date

25  from the WCAB Action.  Compl. ¶ 21.

26       Second, "judicial economy" is not undermined here because the WCAB Action did not

27

28  _____
[2] While this quote discusses "res judicata," collateral estoppel is mentioned earlier in the case.

involve a federal judge and courtroom, so judicial resources would not be used to decide the same issue. *See Vandenberg*, 982 P.2d at 240 ("[B]ecause private arbitration does not involve the use of a judge and a courtroom, later relitigation does not undermine judicial economy by requiring duplication of judicial resources to decide the same issue.").

Finally, Defendants who assert collateral estoppel were not party to the WCAB Action, so "the doctrine does not serve the policy against harassment by vexatious litigation." *Id.* ("[W]hen collateral estoppel is being invoked by a *nonparty* to the private arbitration . . . the doctrine is asserted not to protect one who has already once prevailed against the same opponent on the same cause of action, but simply to gain vicarious advantage from a litigation victory *won by another*."). Although the law recognizes non-mutual offensive collateral estoppel asserted by a non-party, *see Rymer*, 260 Cal. Rptr. at 80 ("[T]he party against whom [collateral estoppel] is asserted must have been a party or in privity with a party to the earlier action"), the core concern of the doctrine – preventing repetitive and harassing litigation – is not centrally implicated here.

Indeed, the application of non-mutual collateral estoppel would, if anything, raise basic fairness questions. If collateral estoppel is applied here, SF BART would be left with a gap in insurance coverage even though it apparently had coverage from at least one insurer throughout the relevant time period. Applying collateral estoppel to SF BART would in fact create a windfall for the insurance companies; collectively, they would escape full coverage responsibility. While it could be argued that SF BART could have joined all the insurance companies in the Gen Re Action to avoid the "empty chain" problem, SF BART's failure to do so did not result in any prejudice to Defendants. Indeed, even without collateral estoppel, they have actually obtained a benefit from SF BART's decision to bring sequential actions; if this Court could find as a factual matter that the injury date is in fact the date stipulated to in the WCAB Action, SF BART would be left with a gap in coverage.

Accordingly, this Court declines to apply collateral estoppel to prevent SF BART from litigating the injury date in the instant action.

C.   Breach of Contract

A cause of action for breach of contract is comprised of: "(1) the contract, (2) *plaintiff's*

9

United States District Court
Northern District of California

1    *performance or excuse for nonperformance*, (3) defendant's breach, and (4) the resulting damages

2    to plaintiff.  *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 697 (Ct. App. 2010) (quoting

3    *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 272 Cal. Rptr. 387, 395 (Ct. App. 1990), *as modified*

4    *on denial of reh'g* (Oct. 31, 2001)).  The Court finds that SF BART has pled all four elements for

5    breach of contract:  (1) the claim may be covered by Defendants' policies; (2) SF BART has

6    complied with the terms of the policies; (3) Defendants' have breached their obligations to SF

7    BART by failing to indemnify SF BART; and (4) SF BART has suffered monetary damages as a

8    result of Defendants' alleged breach of the policies.  *See* Compl. ¶¶ 27–30.

9         Accordingly, the Court **DENIES** Defendants' motions to dismiss for failure to state a

10   breach of contract claim.

11   D.    Declaratory Relief

12        The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its

13   jurisdiction, any court of the United States . . . may declare the rights and other legal relations of

14   any interested party seeking such declaration, whether or not further relief is or could be sought."

15   28 U.S.C. § 2201(a).  To be subject to § 2201(a), a dispute must be "definite and concrete,

16   touching the legal relations of parties having adverse legal interests," "real and substantial," and

17   "admit of specific relief through a decree of a conclusive character, as distinguished from an

18   opinion advising what the law would be upon a hypothetical state of facts."  *MedImmune, Inc. v.*

19   *Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227,

20   240–41 (1937)).  Similar to SF BART's breach of contract cause of action, since the Court finds

21   that judicial estoppel and collateral estoppel are inapplicable, thus permitting SF BART to litigate

22   whether the injury date falls within one of Defendants' policies, the Court **DENIES** Defendants'

23   motions to dismiss SF BART's cause of action for declaratory relief.

24   ///

25   ///

26   ///

27   ///

28   ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## V.   CONCLUSION

In sum, the Court **GRANTS** Defendants' request for judicial notice in part and **DENIES** Defendants' motions to dismiss.

This order disposes of Docket Nos. 15, 18, and 20.

**IT IS SO ORDERED**.

Dated: November 19, 2020

_____
EDWARD M. CHEN
United States District Judge